## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

JAMES FLOYD FANNIN, JR.,           )
                                   )
                    Plaintiff,     )
                                   )
                                   )  Case No. CIV-18-337-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
                    Defendant.     )

## OPINION AND ORDER

Plaintiff James Floyd Fannin, Jr. (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 41 years old at the time of the decision. He has a high school education and worked in the past as a press operator, thermal machine operator, delivery driver, truck driver, surface cleaner, and correctional officer. Claimant alleges an inability to work beginning on November 25, 2010, due to depression, anxiety, and diabetes.

## Procedural History

On February 12, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.

Claimant's applications were denied initially and upon reconsideration. On May 22, 2017, Administrative Law Judge("ALJ") Anne H. Pate conducted a video hearing from Dallas, Texas, and Claimant participated from Tyler, Texas. On August 31, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 10, 2018, the Appeals Council denied review. The decision of the ALJ represents the Commissioner's final decision for purposes of further review. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by: (1) failing to propound a proper hypothetical question to the vocational expert resulting in errors at steps four and five of the sequential evaluation; (2) failing to properly evaluate the medical source and third-party opinions; and (3) failing to properly assess the consistency of Claimant's complaints with the evidence.

**Hypothetical Questions to the Vocational Expert**

In her decision, the ALJ found Claimant suffered from severe impairments of affective disorder and anxiety disorder. (Tr. 169). She determined Claimant could perform a full range of work at all exertional levels, with non-exertional limitations. In so doing, the ALJ found Claimant could understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for extended periods; accept instructions; frequently interact with co-workers, supervisors and the public; and respond to changes in the routine work setting. (Tr. 171).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could return to his past relevant work as a delivery driver, truck driver, and surface cleaner. (Tr. 175). The ALJ also made an alternative finding at step five that Claimant could perform the representative jobs of laundry worker, hand packager, and stocker, all of which were found to exist in sufficient numbers in the national economy. (Tr. 176). As a result, the ALJ concluded Claimant was not under a disability from November 25, 2010, through the date of the decision. *Id*.

Claimant contends the ALJ's hypothetical questions to the VE were incomplete at steps four and five of the sequential evaluation. Specifically, Claimant asserts the ALJ did not properly account for a moderate limitation from state agency psychologist Matthew Turner, Ph.D., regarding Claimant's ability

to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

On June 3, 2016, Dr. Turner determined that Claimant was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In response to the form request that Dr. Turner explain by narrative the sustained concentration and persistence capacities and/or limitations, he referenced his later mental RFC explanation. In his narrative explanation of Claimant's mental RFC, Dr. Turner stated that Claimant "retains the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions[, and] respond appropriately to changes in routine work setting." (Tr. 143).

Claimant contends that the ALJ must account for the moderate limitations found by Dr. Turner in Section I of the MRFCA form in the RFC. In the case of *Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015), the Tenth Circuit discussed the sections of the MRFCA:

> The MRFCA itself states that Section I "is for recording summary conclusions derived from the evidence in the file" and directs that "[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III." Aplt. App., Vol. II at 237. This tracks several provisions of the Social Security Administration's Program Operations Manual Systems

(POMS).1  The POMS provides that Section III of the
MRFCA, not Section I, is for recording a medical
consultant's formal mental RFC assessment, and that
adjudicators are to use the Section III narrative as the
RFC assessment:

> The purpose of section I . . . is chiefly to
> have a worksheet to ensure that the
> psychiatrist or psychologist has considered
> each of these pertinent mental activities and
> the claimant's or beneficiary's degree of
> limitation. . . . It is the narrative written
> by the psychiatrist or psychologist in Section
> III . . . that adjudicators are to use as the
> assessment of RFC.
>
> POMS DI 25020.010 B.1.; see also POMS DI
> 24510.060 B.4.a. (stating that "Section III .
> . . is for recording the mental RFC
> determination [and where] . . . the actual
> mental RFC assessment is recorded"); POMS DI
> 24510.065 A. (substantially the same).

But this does not mean that an ALJ can turn a blind eye
to moderate Section I limitations.  In a note to its
description of the "moderately limited" checkbox, the
POMS states that "[t]he degree and extent of the capacity
or limitation must be described in narrative format in
Section III [of the MRFCA]." POMS DI 24510.063 B.2.
(boldface omitted) (emphasis added).  The POMS also
provides that "[t]he discussion of all mental capacities
and limitations in [Section III] must be in narrative
format," and that Section III is for "explaining the
conclusions indicated in Section I, in terms of the
extent to which these mental capacities or functions
could or could not be performed in work settings." POMS
DI 24510.060 B.4.a. & B.4.b.  Thus, if a consultant's
Section III narrative fails to describe the effect that
each of the Section I moderate limitations would have on
the claimant's ability, or if it contradicts limitations
marked in Section I, the MRFCA cannot properly be
considered part of the substantial evidence supporting
an ALJ's RFC finding.  Several district courts in this
circuit have reached a similar conclusion based on
reasoning we consider persuasive.  *See*, *e.g.*, *Gorringe
v. Astrue*, 898 F.Supp.2d 1220, 1224–25 (D.Colo. 2012);

*Baysinger v. Astrue*, No. 11-cv-00333-WYD, 2012 WL
1044746, at *5-6 (D.Colo. Mar. 28, 2012) (unpublished).

*Carver v. Colvin*, 600 Fed. Appx. 616, 618-19 (10th Cir. 2015).

The explanation of the interaction of Section I and Section
III in the *Carver* case indicates that if the Section III narrative
inadequately addresses the summary restrictions found in Section
I, it cannot be relied upon to provide substantial evidence in
support of the RFC. In this case, Dr. Turner's moderate
restriction regarding Claimant's ability to complete a normal
workday and workweek without interruptions from psychologically
based symptoms and to perform at a consistent pace without an
unreasonable number and length of rest periods is addressed in the
Section III finding that Claimant "retains the ability to
understand, remember and carry out detailed but not complex
instruction, make decisions, attend and concentrate for extended
periods, accept instructions[, and] respond appropriately to
changes in routine work setting." (Tr. 143).

The ALJ discussed Dr. Turner's mental RFC assessment, noting
it was persuasive at the time it was issued. However, she noted
that additional treatment notes presented at the hearing level
indicated Claimant had additional social limitations. (Tr. 173-
74). Thus, the ALJ included the limitations determined by Dr.
Turner in the RFC, but she also included additional social
limitations. (Tr. 171).

Claimant also contends that the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). He asserts the ALJ failed at step two of the *Winfrey* analysis because she did not specifically determine the precise physical and mental demands of Claimant's past relevant work. He further asserts that by failing to perform a proper step-two analysis that the ALJ could not perform a proper step-three analysis under *Winfrey*.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id*. at 1025; *see also Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).

The VE testified that she had reviewed the vocational evidence and had listened to Claimant's testimony. She described Claimant's past relevant work, relying on the Dictionary of Occupational Titles ("DOT"). She testified Claimant had past relevant work as a press operator, thermal machine operator, delivery driver, truck

driver, surface cleaner, and correctional officer, referring to the applicable DOT number, the level of exertion, and the skill level of the job. (Tr. 81). The ALJ presented the VE with a hypothetical question, and the VE testified Claimant could perform his past relevant work as a delivery truck driver, truck driver, and surface cleaner. Although there was not explicit testimony from the VE regarding the specific physical and mental demands of Claimant's work, the ALJ noted in the decision that "[a]s the claimant has described his past relevant work activity and as the [VE] in agreement with the [DOT] classified the work, the [C]laimant was required to perform demands within the [RFC] identified above as a delivery truck driver, truck driver, and surface cleaner." The ALJ concluded that "[i]n comparing the [C]laimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the [C]laimant is able to perform it as actually and generally performed." (Tr. 175). The Court finds no error with regard to the ALJ's step four determination. *See Adcock v. Commissioner of Soc. Sec.*, 748 Fed. Appx. 842, 847–48 (10th Cir. 2018); *see also Doyal*, 331 F.3d at 760-61.

However, even if the ALJ's step-four analysis is insufficient, the ALJ made an alternative finding at step five. The Court finds no error in the ALJ's RFC determination as it relates to the hypothetical questions posed to the VE. As discussed herein, the hypothetical questions to the VE included those

limitations found to exist by the ALJ and included in the RFC. (Tr. 176, 81-82). *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Based upon these limitations, the VE testified Claimant could perform the representative jobs of laundry worker, hand packager, and stocker, all of which were found to exist in sufficient numbers in the national economy. (Tr. 176, 81-82).

### Evaluation of Opinion Evidence

Claimant also argues the ALJ failed to properly consider the medical opinions of Dr. Turner, Tyrone Miller, D.O., Richard Ingram, M.D., failed to properly account for the opinions expressed on the third-party report form completed by Claimant's wife, and the Global Assessment of Functioning ("GAF") scores in the record.

As discussed above, the ALJ properly accounted for the limitations determined by Dr. Turner in the RFC. There is no error in the ALJ's treatment of Dr. Turner's opinions.

The ALJ also discussed the opinions from Dr. Miller and Dr. Ingrim. She noted that Dr. Miller examined Claimant for a hernia in November of 2016, noting Dr. Miller did not feel a hernia defect, but felt a mass in Claimant's abdomen. Dr. Miller

indicated that Claimant should "avoid heavy lifting at this time." (Tr. 717-20). The ALJ gave "little weight" to the heavy lifting restriction interpreting it as "only precautionary and not based upon any definitive diagnosis." She further noted that even considering the opinion, it would not preclude Claimant from being able to perform his past relevant work and the step-five representative jobs of laundry worker, hand packager, and stocker. (Tr. 169-70, 175-76).

The ALJ assigned Dr. Ingrim's opinions little weight. She noted his opinion from December of 2016 that Claimant's disability was permanent. (Tr. 173, 739-41). She further noted his opinion from January of 2017, wherein Dr. Ingrim noted Claimant was substantially limited in his "self-direction" and "capacity for independent living." (Tr. 173, 742-43). The ALJ determined Dr. Ingrim's opinion that Claimant's disability was permanent was not supported by the evidence, "including improvement in the [C]laimant's symptoms documented in mental health treatment notes . . . and generally normal mental status examinations." She also noted that any physical impairments had been found nonsevere, and the opinion addressed an issue reserved to the Commissioner. With regard to the opinion regarding self-direction and capacity for independent living, the ALJ determined Dr. Ingrim's opinion was vague, as it did not provide any quantifiable capacities. (Tr. 173).

Contrary to Claimant's arguments, the ALJ appropriately considered and weighed the opinions of Dr. Miller and Dr. Ingrim. "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The Court finds no error in this regard.[2]

Claimant next argues the ALJ failed to properly consider the third-party report completed by Claimant's wife in March of 2016. However, the ALJ expressly considered the opinions and the Court finds no error in this regard. The ALJ detailed the opinions included in the report and determined they were only entitled to partial weight. The ALJ gave less weight to the statements regarding Claimant's attention and concentration, finding they were unsupported by the record. She cited to treatment notes showing that Claimant's memory, concentration, and attention were observed to be normal. The ALJ assigned more weight to the opinions regarding Claimant's social functioning, noting they were

---

[2] The Court finds there was no error by the ALJ for not re-contacting Dr. Ingrim. Claimant was represented at the hearing, and Claimant's representative agreed the record was complete. (Tr. 68-69); *see also Hawkins*, 113 F.3d at 1167.

sustained by the treatment notes and Claimant's testimony.  The ALJ determined that overall the third-party function report did not indicate significant limitations in Claimant's daily functioning.  (Tr. 173).

Claimant further argues the ALJ failed to account in the RFC for the GAF scores assigned to him throughout the record. "The GAF [score] is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF score alone is insufficient to reverse an ALJ's determination of non-disability. *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003); *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004); *Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. 2004). "[S]tanding alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work." *Lopez*, 78 Fed. Appx. at 678.  "'While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.'"  *Id.*, quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

The ALJ specifically discussed the GAF scores assigned to Claimant.  She noted Claimant was assigned GAF scores ranging from 30-50 from 2011-2014.  However, the ALJ assigned little weight to

the scores because they represented "merely a snapshot of the [C]laimant's mental functioning at that moment in time, and is not necessarily representative of his overall mental condition." The ALJ noted that Claimant's more recent mental health treatment notes from 2016 revealed improvement in his symptoms of depression and anxiety. (Tr. 173). This Court finds the ALJ was under no legal obligation to discuss Claimant's GAF scores further or give them more weight than she expressly gave them in the decision.

## Evaluation of Complaints and Symptoms

Claimant contends the ALJ failed to properly assess the consistency of his complaints with the evidence of record. Specifically, Claimant asserts the ALJ failed to provide the required substantial evidence to support her consistency determination.

Deference must be given to an ALJ's evaluation of Claimant's complaints or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can

assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls*, 206 F.3d at 1372.

As part of her evaluation of Claimant's complaints and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 172). She determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but she found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. (Tr. 174). In making these determinations, she summarized the medical evidence, Claimant's testimony, and reports of symptoms in detail. (Tr. 172-74). Specifically, she determined Claimant's testimony that he could not sustain employment because of debilitating symptoms of depression, anxiety, and other non-severe impairments was "largely inconsistent with the lesser degree of limitation demonstrated in the medical record. In particular, mental health treatment records indicated improvement in the [C]laimant's symptoms over time. Mental status examinations were within normal limits." (Tr. 174) (exhibit citations omitted). The ALJ also relied upon Claimant's

testimony that he could drive short distances, tend to his own personal care, and perform chores including weeding, laundry, and vacuuming. She further noted that Claimant's caretakers had observed that his memory, concentration, and attention were within normal limits. (Tr. 174) (exhibit citations omitted). The Court finds no error with the ALJ's assessment of Claimant's symptoms and complaints, as it is supported by the medical record.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 7th day of April, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE